## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| SOLOMON, RONALD,                                    : | |
| | Civil Action No. 07-1102 (FLW) |
| Plaintiff,      : | |
| v. | |
| : | **OPINION** |
| BRISTOL-MYERS SQUIBB CO., <u>et al.</u>, | |
| : | |
| Defendants. | |
| _____ : | |

**WOLFSON, District Judge:**

This matter comes before the Court on a motion to dismiss pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure brought by defendants Bristol Myers-Squibb Company, Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis U.S., Inc., and Sanofi-Synthelabo, Inc., (collectively, "Defendants").  Plaintiff Ronald Solomon ("Plaintiff") brings the instant suit against Defendants because he alleges that he suffered injuries as a result of Defendants' unlawful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and sale of the prescription drug Plavix.  In that respect, Plaintiff's First Amended Complaint ("Amended Complaint") asserts various Texas state and common law claims against Defendants.  In the present matter, Defendants move to dismiss Count V, i.e., negligent misrepresentation claim and Count VI, i.e., fraud claim pursuant to the Texas Deceptive Trade Practices Act, Tex. Bus. Comm. Code § 17.01, <u>et seq.</u>  For the reasons that follow, Defendants' motion to dismiss these counts is granted.

# BACKGROUND FACTS

## I.      Procedural History

On March 8, 2007, Plaintiff, a Texas resident, filed a Complaint against Defendants asserting claims under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, et seq., the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, et seq., the New Jersey Uniform Commercial Code, N.J.S.A. 12A:2-313, and the common law of the State of New Jersey, invoking this Court's diversity jurisdiction. (March 8, 2007 Complaint ¶¶ 6-8.) Plaintiff is one of the individual claimants[1] that lodged separate complaints[2] against Defendants in this district between October 2006 and March 2007, invoking this Court's diversity jurisdiction and asserting similar claims under New Jersey law based upon injuries allegedly suffered as a result of Defendants' alleged negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and/or the sale of Plavix.  Id.  A brief recitation of the procedural history in the related matters is necessary to a full understanding of the prolonged procedural history in this matter.

In January 2007, prior to the filing of the instant action, Defendants filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in the matters of Hall v. Bristol-Myers Squibb, No. 06-CV-5203 (hereinafter, "Hall"), and Skilstaff v. Bristol-Myers Squibb, No. 06-CV-4965 (hereinafter,

---

[1]      Initially, claims were filed in twenty-four individual cases, however, a Michigan plaintiff in the matter of Felmlee v. Bristol-Myers Squibb Co., No. 06-6240, voluntarily dismissed her claim in February, 2008.

[2]      A number of the twenty-three claimants were joined in their actions by spouses asserting claims for loss of consortium.

2

"Skilstaff")[3], and indicated their intention to file similar motions in the other Plavix cases pending before this Court.  In March 2007, this Court, without objection from the parties, administratively terminated Defendants' motions in Hall and Skilstaff having determined that two cases then pending before the New Jersey Supreme Court addressed the central issues to be decided by this Court on Defendants' motions to dismiss.  The parties further agreed that all Plavix cases filed in this district be held in abeyance.  Following the issuance of the New Jersey Supreme Court's decisions in Rowe v. Hoffman-LaRoche, 189 N.J. 615 (2007), and International Union of Operating Engineers, Local #68 v. Merck, 192 N.J. 372 (2007), the plaintiff in Skilstaff voluntarily dismissed the action and this Court granted Defendants' request to file a single omnibus motion to dismiss applicable to all personal injury Plavix lawsuits then pending in this district.

One of the main issues to be determined by this Court in the omnibus motion was the federal preemption of the plaintiffs' individual state law claims.  In February 2008, however, in light of the fact that the Third Circuit had pending two separate cases, Colacicco v. Apotex, Inc., and McNellis ex. rel. DeAngelis v. Pfizer, Inc., on its docket regarding substantially similar preemption issues, as did the United States Supreme Court, Levine v. Wyeth, this Court administratively terminated the personal injury Plavix cases pending in this district and permitted plaintiffs to re-file amended complaints in the event there were viable claims after the decisions from the Higher Courts.  Following the issuance of the Supreme Court's decision in Levine v. Wyeth, __ U.S. __, 129 S.Ct. 1187, 173 L.Ed. 2d 51 (2009), this Court reinstated the closed cases and, on May 1, 2009, each of

_____

[3]    The plaintiff in the matter of Skilstaff v. Bristol-Myers Squibb, is not among the twenty-three individual claimants seeking damages for personal injuries, rather Skilstaff was an Alabama third-party payor seeking certification of a class of third-party payors for violations of the New Jersey Consumer Fraud Act.

the plaintiffs filed an amended complaint.  In the amended complaints, each individual plaintiff brought claims under the laws of the states in which they reside, rather than New Jersey, as originally plead.  Thereafter, Defendants moved to dismiss certain counts of the amended complaint filed by each individual plaintiff.  It is the Defendants' motion to dismiss Counts V and VI with regard to this Plaintiff that this Court now considers.

## II.    Factual Background

The following version of events assumes Plaintiff's allegations in the Amended Complaint to be true because Defendants move pursuant to Fed. Civ. R. P. 12(b)(6).  The Court will recount only those facts relevant to this Motion.

Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis U.S., Inc., and Sanofi-Synthelabo, Inc. (collectively, the "Sanofi Defendants") partnered with Bristol-Myers Squibb Company ("BMS") to manufacture and market Plavix in the United States.  See Amended Complaint ("Am. Compl."), ¶¶ 2-5.  In April 1997, the Sanofi Defendants and BMS applied for a rare, priority regulatory review by the Food and Drug Administration ("FDA") clearing the way for Defendants to bring Plavix to market in November 1997.  Id., ¶ 12.  According to Plaintiff, Defendants heavily marketed Plavix directly to consumers through television, magazine, and internet advertising, falsely touting Plavix "as a 'super-aspirin' that would give a person even greater cardiovascular benefits than a much less expensive, daily aspirin, while being safer and easier on a person's stomach than aspirin."  Id., ¶ 14. Plaintiff alleges that Defendants either knew or should have known, based upon their own studies, that not only was Plavix not more efficacious than aspirin in terms of preventing heart attacks and strokes, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder or death far outweighed any benefit from the drug.  Id., ¶ 15.

As evidence that Defendants' were indeed aware of their false and misleading promotion of Plavix, Plaintiff points to a November 1998 letter from the FDA wherein the FDA instructed Defendants to cease promoting Plavix for off-label use in patients undergoing coronary artery stent placement.[4]  Id., ¶ 19.  Plaintiff also points to the same FDA reprimand wherein Defendants were instructed to cease promoting Plavix at an off-label dose, which was nearly four (4) times that of the recommended dosage.  Id., ¶ 19.  In addition to criticizing Defendants for promoting Plavix for unapproved use, the FDA also criticized Defendants for overstating the safety profile of Plavix with respect to its use with other drugs.  Id., ¶ 20.  In particular, Plaintiff points to the fact that Defendants touted the safety of Plavix when combined with aspirin (known as "dual therapy") when, in fact, its safety had not been established.  Id.  According to Plaintiff, Defendants' claim regarding the safety of dual therapy has now been proven to be untrue in a recent study published in the New England Journal of Medicine in April 2006 entitled Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance (the "CHARISMA Study"[5]).  Id.

As further evidence of Defendants' allegedly false and misleading promotional practices, Plaintiff points to a December 1998 letter from the FDA, wherein the FDA demanded that Defendants cease the distribution of advertising materials that claimed that Plavix has been proven to be more effective than aspirin.  Id., ¶ 21.  The FDA criticized Defendants' materials as an overstatement of efficacy, which was unsubstantiated and lacking in fair balance.  Id. Again in 2001,

---

[4]     As discussed more fully infra, the Court will consider the extrinsic documents referenced in the FAC as they were explicitly relied upon by Plaintiff in the FAC.

[5]     The CHARISMA Study derives its name from the Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance trial, which was the subject of the article.

the FDA ordered Defendants to immediately cease distribution of promotional material that made false or misleading claims about Plavix.  Id., ¶ 22.  Specifically, the FDA noted that the clinical evidence of the efficacy of Plavix is derived from Defendants' study entitled Clopidogrel versus Aspirin in Patients at Risk of Ischemic Events Trial (the "CAPRIE" Study).  Id.  Defendants' promotional material depicted a 19.2% relative risk reduction for Plavix versus aspirin, yet the actual findings of the CAPRIE Study were that Plavix was not proven to be significantly more effective than aspirin.  Id.  Additionally, the FDA again instructed Defendants to cease claiming that the use of Plavix combined with aspirin was safe and effective.  Id.

According to Plaintiff, in addition to misinforming physicians and consumers through false and misleading promotional materials and advertising, Defendants' drug representatives also misinformed physicians regarding the proper types of patients who should be prescribed Plavix, the duration of its proper usage and the applications for which Plavix is safe and FDA approved.  Id., ¶ 23.  Specifically, Plaintiff points to the fact that the drug representatives have encouraged physicians to prescribe Plavix to a broad population who would receive the same therapeutic benefit from aspirin alone, without the purported risk of death, and to use Plavix for unapproved applications.  Id., ¶ 24.

Plaintiff alleges that after a nearly eight-year run of misleading physicians and the public regarding the safety and efficacy of Plavix, scientific studies now reveal that Plavix is in fact dangerous.  Id., ¶ 26.  Citing a study published in The New England Journal of Medicine in January 2005, entitled Clopidogrel versus Aspirin and Esomeprazole to Prevent Recurrent Ulcer Bleeding (the "Chan Study"), Plaintiff notes the dangers of Plavix.  Specifically, Plaintiff contends that the Chan Study demonstrates the fallacy of Defendants' assertions that Plavix is safer and more effective

6

for patients suffering from gastrointestinal intolerance to aspirin.  Id., ¶ 27.  Plaintiff points out that the Chan Study recommended that prescribing guidelines for Plavix be changed so that patients would not erroneously believe that Plavix is safer on the stomach than aspirin, in light of the Study's findings that recurring stomach bleeding was 8.6% in the Plavix group versus only .7% in the aspirin group.  Id.  Plaintiff additionally points to the Chan Study's finding that an aspirin a day plus esomeprazole (the generic name for an inexpensive over-the-counter proton pump inhibitor such as Prilosec) is far more cost effective than paying for the four-dollar per day Plavix pill, which greatly increases the risk of stomach bleeding.  Id., ¶28.  Finally, citing the CHARISMA Study, Plaintiff contends that Plavix plus aspirin ("dual therapy") is only minimally more effective than aspirin plus placebo at preventing atherothrombotic events, and more significantly, does more harm than good in those patients without peripheral arterial disease or acute coronary syndrome in that it poses a 20% increased risk to the patient of suffering bleeding injuries, heart attacks, stroke and death.  Id., ¶ 29.

Due to these alleged illegal practices, Plaintiff asserts, inter alia, a fraud claim pursuant to the Texas Deceptive Trade Practices Act, Tex. Bus. Comm. Code § 17.01, et seq. ("TDTP" or the "Act"), and a Texas state common law claim of negligent misrepresentation; these claims are the subject of this motion.  In connection with these two claims, Plaintiff alleges that he "was prescribed Plavix, to be taken in combination with aspirin (known as 'dual therapy') on or about January 17, 2003 in connection with his unstable angina and stent placement."  Plaintiff further alleges that on or about July 21, 2005, "he was found to be bleeding in his small intestines and was transfused two pints of blood.  He was taken off Plavix and spent over a week in the hospital."  Eventually, "surgery was required to stop the bleeding.  Plaintiff continues to have gastrointestinal problems as a result of taking Plavix."  Am. Compl., ¶ 31.

7

As result of the alleged injury, Plaintiff, in Count VI of the Amended Complaint, alleges that Defendants violated the TDTP by making "untrue, deceptive and/or misleading representations of material facts, and omitted and/or concealed material facts from the public, including the Plaintiff herein, concerning the use and safety of Plavix." Id., ¶ 96.  In that regard, Plaintiff alleges that "Defendants knew or should have known, that Plavix was unreasonably dangerous and defective, and had a propensity to cause serious and potentially life threatening side effects." Id., ¶ 93. Plaintiff further alleges that "Defendants failed to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. " Id., ¶ 95.  As a result, Plaintiff alleges that he and his prescribing physician relied on such statements and omissions to their detriment.  Id., ¶¶ 99, 102.

In similar fashion, Count V alleges that "Defendants falsely represented to Plaintiff in direct to consumer advertising and indirectly through misrepresentation to the prescribing physician, that Plavix was safe and effective.  The representations by Defendants were in fact false and Plavix was not safe and was in fact dangerous to Plaintiff's health." Id., ¶ 79.  Plaintiff further alleges that "[a]t the time the aforesaid representations were made, Defendants concealed from Plaintiff and his prescribing physician information about the propensity of Plavix to cause great harm.  Defendants negligently misrepresented claims regarding the safety and efficacy of Plavix despite the lack of information regarding the same." Id., ¶ 80.  Due to these misrepresentations, Plaintiff alleges that he suffered injuries by taking Plavix and thus, he initiated the instant action.

Now, Defendants move to dismiss Count V, the negligent misrepresentation claim, and Count VI, the TDTP claim, of the Amended Complaint.  The Court will turn to address the

sufficiency of these claims.

## DISCUSSION

### I.        Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 530 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles.  "First, the tenet that a court must accept as true all of the

9

allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).[6] "Second,

only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.

Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint

has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

Before reaching the merits of Plaintiff's claims, there is a threshold procedural question as

to the documents and exhibits this Court may consider on this motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6). As previously referenced in this Court's discussion of the Factual Background,

Plaintiff supplies this Court with several exhibits, including: (1) a December 1998 FDA letter

addressed to Sanofi Pharmaceuticals, Inc.; (2) a copy of the CHARISMA Study; (3) a November

1998 FDA letter addressed to Sanofi Pharmaceuticals, Inc.; (4) a May 2001 FDA letter addressed

to Sanofi-Synthelabo Inc.; (5) the Chan Study; and (6) a Mediation Letter dated March 12, 2009.

Additionally, the Defendants provide the Court with the November 17, 1997 approval letter for

Plavix. While generally a court may not consider matters outside the pleadings when ruling on a

motion to dismiss, documents that are "integral to or explicitly relied upon in the complaint" may

indeed be considered without converting a motion to dismiss into a motion for summary judgment.

In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir.1999) (emphasis and

---

[6]       The Court notes that because the briefing in this matter was filed shortly after the
United States Supreme Court's decision in Ashcroft, counsel for Defendants moved for leave to
file supplemental briefing addressing the standard of review applicable to the instant motion.
This Court found additional briefing unnecessary and, accordingly, denied Defendants' request.

citations omitted).   Accordingly, the referenced exhibits are properly before the Court on the instant

motion to dismiss.

## II.     The TDTP Claim

### A.     Notice

At the outset, Defendant submits that Plaintiff's TDTP claim should be held in abeyance for

his failure to comply with the notice requirements set for in Tex. Bus. & Comm. Code  § 17.505.

Indeed, under section 17.505, a plaintiff must give notice of a TDTP claim to a defendant sixty days

before filing suit:

> As a prerequisite to filing a suit seeking damages under Subdivision (1) of
> Subsection (b) of Section 17.50 of this subchapter against any person, a
> consumer shall give written notice to the person at least 60 days before filing
> the suit advising the person in reasonable detail of the consumer's specific
> complaint and the amount of economic damages, damages for mental anguish,
> and expenses, including attorneys' fees, if any, reasonably incurred by the
> consumer in asserting the claim against the defendant. During the 60-day period
> a written request to inspect, in a reasonable manner and at a reasonable time
> and place, the goods that are the subject of the consumer's action or claim may
> be presented to the consumer.

Tex. Bus. & Comm. Code § 17.505(a); see Richardson v. Forster & Sear, L.L.P., 257 S.W.3d 782,

784 (Tex. Ct. App. 2008).   The overarching purpose of the notice provision is "to discourage

litigation and encourage settlement of consumer complaints." Richardson, 257 S.W.3d at 784 (citing

Hines v.Hash, 843 S.W.2d 464, 468 (Tex. 1992)).   The Texas Supreme Court has advised that

"[w]hen a plaintiff fails to comply with the requirement, abatement of the action for the statutory

notice period is more consistent with the purpose of notice than dismissal." Hines, 843 S.W.2d at

468-69.   Thus, "when a plaintiff fails to provide presuit notice under subsection (a), the trial court

must abate the suit until the plaintiff serves notice that complies with subsection (a)." Richardson,

11

257 S.W.3d at 785; see also Tex. Bus. & Com. Code Ann. §§ 17.505(d), (e).

There are two exceptions to the requirement, notice is not required when: (1) sixty days would be impracticable because the statute of limitations would run, or (2) the TDTP claim is asserted by way of a counter claim. Tex. Bus. & Com. Code Ann. §§ 17.505(b).  Moreover, the burden is on a plaintiff to plead that he gave notice to the defendants.  Hines, 843 S.W.2d at 467. Here, Plaintiff has failed to both plead and comply with this notice requirement.

Arguing otherwise, Plaintiff contends that he has complied with the notice provision of the TDTP because Defendants had sufficient notice of the nature of the claims asserted.  Plaintiff reasons that the present case was brought in March 2007, and it was administratively terminated pending the outcome of the Supreme Court's decision in Wyeth v. Levin.  In that regard, Plaintiff maintains that given the procedural history of this case, Defendants had ample notice.  In addition, Plaintiff also points to a mediation letter sent to Defendants on March 12, 2009, wherein Plaintiff expressed his intention to reinstate this case, which at that time was administratively dismissed by the Court.

Having surveyed the decisions of Texas courts in this context, the Court is constrained by prior case law and must enforce the notice provision of § 17.505.  Here, Plaintiff does not dispute that he did not submit a demand letter sixty days prior to the filing of the Original Complaint on March 8, 2007.  Indeed, Plaintiff did not originally assert a claim under the TDTP and thus, he was not required to send a notice to Defendants when he filed his Original Complaint.  Consequently, and more importantly, the Original Complaint cannot constitute as a valid notice under the TDTP because it asserted only New Jersey state law claims.  Accordingly, Plaintiff was required to send a notice sixty days prior to filing his Amended Complaint which asserts a claim under the CLRA. He failed to do so.

12

Nevertheless, Plaintiff contends that Defendants had ample notice of the claims because a significant amount of time has lapsed between the initial filing of the Original Complaint and the Amended Complaint.  However, this passage of time, due to the court-ordered termination, cannot excuse Plaintiff's failure to comply with the TDTP.  While Plaintiff also suggests that the mediation letter sent to Defendants on March 12, 2009, satisfies with  the spirit of the notice requirement, the letter plainly does not meet the requirements of § 17.505.  Specifically, the letter was sent less than sixty days prior to the filing of the Amended Complaint, and it did not advise Defendants of his specific complaints in reasonable detail and the amount of economic damages, including attorneys' fees, reasonably incurred by Plaintiff in asserting the claim against Defendants.  More importantly, the letter does not even mention this particular Plaintiff, or any of the statutory requirements under the TDTP.  Accordingly, Count V of the Amended Complaint is held in abeyance because of Plaintiff's failure to comply with the notice requirements of Tex. Bus. & Comm. Code § 17.505(a).

### B.      Sufficiency of the Pleadings

Nonetheless, Plaintiff's TDTP claim is dismissed  because he fails to state a claim. To state a claim under the TDTP, neither party disputes that Plaintiff must plead with particularity pursuant to Rule 9(b). Indeed, claims alleging violations of the TDTP are subject to the pleading requirements of Rule 9(b).  See Frith v. Guardian Life Ins. Co. of Am., 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998)("[c]laims alleging violations of the Texas Insurance Code and the [TDTP] . . .  are subject to the requirements of Rule 9(b)").  In Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), the Third Circuit elucidated the heightened pleading standard under Rule 9(b):

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." To satisfy this standard, the

13

> plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

Id. at 200 (internal citations omitted); In re Supreme Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir. 2006)(the Third Circuit advised that pursuant to Rule 9(b), at a minimum, a plaintiff must support his/her allegations of fraud with all the essential factual background that would accompany "'the first paragraph of any newspaper story' – that is, the 'who what, when, where and how' of the events at issue"(citations omitted)). Moreover, a complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998)(where the complaint failed to allege "what actually happened to either" of the plaintiffs, the complaint did not plead "fraud with the specificity required by Rule 9(b)"). This type of heightened pleading requirement is in accord with Fifth Circuit precedent. See Tel-Phonic Servs., Inc., v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)("[a]t a minimum, Rule 9(b) requires particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby"); Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003)( "[p]ut simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" (citations omitted)).

The TDTP makes unlawful false, misleading or deceptive acts or practices in the conduct of any trade of commerce. The elements of a TDTP action are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts, as defined by the statute; and (3) these acts constituted a producing cause of the consumer's damages. See Tex. Bus. & Comm. Code § 17.50(a)(1). Section 17.50 of the TDTP defines false, misleading or deceptive acts or practices as including: (1) acts or practices specifically enumerated in § 17.46(b) of the Act that the consumer

relied on to the consumer's detriment; and (2) "any unconscionable action or course of action by any person." Tex. Bus. & Comm. Code § 17.50(a).  An unconscionable action or course of action is defined by the TDTP as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Comm. Code § 17.45(5).

In the Amended Complaint, Plaintiff alleges a unified course of fraudulent conduct and he relies entirely on that as the basis of his TDTP claim.  More specifically, Plaintiff alleges that Defendants violated the TDTP for the following reasons:

a.  Defendants' business practices caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b.  Defendants' business practices caused confusion or misunderstanding as to affiliation, connection, or association with or certification by another;

c.  Defendants represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which it does not[; and]

d.  Defendants failed to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Am. Comp., ¶ 95.  Plaintiff further alleges that Defendants violated the TDTP "in that they made untrue, deceptive, and/or misleading representations of material facts, and omitted and/or concealed material facts from the public, including the Plaintiff herein, concerning the use and safety of Plavix."  Id., ¶ 96.

While Plaintiff has arguably sufficiently alleged with particularity with respect to the first two elements of the claim – Plaintiff is a consumer as defined by the TDTP § 17.45(4) and Defendant

engaged in false, misleading and deceptive acts –  Plaintiff's TDTP claim falls short of complying

with the rigors of Rule 9(b) with respect to the last element - Defendant's acts were a producing

cause of Plaintiff's damages.

Arguing the contrary, Plaintiff contends that the Amended Complaint asserts sufficient facts

to satisfy Rule 9(b).  In particular, Plaintiff points to ¶¶ 19-22, 27 and 29-30 (as noted above) of the

Amended Complaint to support his assertion that he has pled the so-called "newspaper requirements"

of Rule 9(b).   Summarizing his points, Plaintiff states (1) that he has alleged who made the

misleading statements - Defendants; (2) that he has alleged what was misleading about Defendants'

statements - Defendants advertised Plavix as safe and effective in "dual therapy" treatments, off-

label use, and more effective than aspirin; (3) that he has alleged that Defendants' statements were

known to be misleading or should have been known when made - multiple FDA warnings against

deceptive advertising of Plavix's safety and use in certain treatments, as well as scientific studies,

both internal and external, refuting Defendants' wrongful advertising of Plavix; (4) that he has

alleged what Defendants' misrepresentations were - the safety and effectiveness of Plavix as

advertised in the face of both FDA warnings to the contrary and numerous scientific studies; and (5)

that he has alleged why Defendants' misrepresentations were misleading - concealment of the risks

associated with the use of Plavix, promotion of the safe and beneficial use of Plavix for off-label use

in patients receiving arterial stents, even though the FDA and scientific studies warned against such

use.   Nevertheless, Plaintiff also suggests that under the circumstances of this case, because

Plaintiff's allegations of fraud are within Defendants' control, less specificity of pleading is required

pending discovery.

While Plaintiff made exhaustive allegations regarding Defendants' alleged illegal practices

by relying on FDA correspondence and scientific studies, the Amended Complaint fails to allege with specificity the connection between Defendants' conduct and Plaintiff's resultant injury. Specifically, Plaintiff fails to identify any specific advertisements he viewed, how he was misled by these advertisements, how these advertisements affected his prescription for Plavix and how these advertisements caused any of his injuries. In other words, the Amended Complaint fails to identify which, if any, of the promotional or marketing materials were received, viewed or relied upon by Plaintiff, and if they were, when these materials were viewed and how they were relied upon.  More simply stated, Plaintiff has failed to allege any specific facts establishing a connection between the alleged conduct of Defendants and the alleged injury claimed.  See Kritley v. Wadekar, No. 05-5383, 2006 U.S. Dist. LEXIS 60309, at *9-10 (D.N.J. Aug. 25, 2006)("Plaintiffs offer only general, conclusory statements that Plaintiffs purchased pharmaceutical products manufactured by the company that Defendants were officers and directors of, and that Defendants marketed the products using false representations, with fraudulent scienter."  Plaintiffs do not allege with particularity any of the facts that would be expected to be within their knowledge: exactly who bought exactly what product when, relying on what false representations made when by whom"); Guilbealt v. R.J. Reynolds Tobacco Co., 84 F.Supp. 2d 263, 269 (D.R.I. 2000)(when a plaintiff claims that a product advertisement or promotion led to injuries, he or she must "identify specific advertising he [or she has] seen and how it ha[s] affected" him or her to comply with Rule 9(b)'s requirements).

Likewise, Plaintiff fails to allege that his physicians personally received a misrepresentation of fact from Defendants and relied upon that misrepresentation in deciding to prescribe Plavix to

17

Plaintiff.[7]  Rather, Plaintiff alleges only generally that the "Defendants' statements and omissions were made with the intent that the Plaintiff herein, and his prescribing physician, would rely on such statements and omissions."  Am. Compl., ¶ 99.  Although the Amended Complaint alleges that Defendants' drug representatives have misinformed physicians about the proper types of patients who should be given Plavix, the duration of its proper usage, and the applications for which it is safe and FDA approved, Plaintiff has not identified the representatives, what was said, when it was said, to whom it was said – whether it was communicated to Plaintiff's physicians – and how these statements relate to Plaintiff's prescription of Plavix.

Moreover, these factual allegations are not the type of facts that are within the control of, and therefore subject to concealment by Defendants. Instead, these important details regarding misrepresentations made to, and relied upon by, Plaintiff and his physicians are within Plaintiff's ken, but are nowhere to be found within the Amended Complaint.[8]

The deficiencies of Plaintiff's Amended Complaint in this context were recently discussed by the court in In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, No. 06-5774,

---

[7]     Plaintiff's Amended Complaint does not provide the name of his prescribing physician.

[8]     Indeed, in that connection, Plaintiff is uniquely equipped to determine from his physician whether the physician received such promotional literature. Even where factual information may be within the domain or control Defendants, such as the identities of the doctors who received promotional information, Plaintiff must still "accompany their legal theory with factual allegations that make their theoretically viable claim plausible." In re Burlington Coat Factory, 114 F.3d 1410, 1418 (3d Cir. 1997).  Moreover, to "avoid dismissal," a complaint must also delineate at least the nature and the scope of a plaintiff's efforts to obtain, before filing the complaint, the information needed to plead with particularity.  Shapiro v. UJB Financial Corp., 964 F.2d 272, 285 (3d Cir. 1992).  Plaintiff has failed to comply with these requirements. Plaintiff's Amended Complaint makes no allegations that the information required for Plaintiff to meet his Rule 9(b) obligation is solely within Defendants' control.

18

2009 U.S. Dist. LEXIS 58900 (D.N.J. Jul. 10, 2009) (Chesler, J.)  In that case, plaintiffs filed a class action complaint alleging, inter alia, that defendants "engaged in improper and illegal off-label promotion of Intron-A, PEG-Intron, Rebetol and Temodar." Id. at *6.  Plaintiffs further alleged that defendants "orchestrated a campaign to illegally market and promote the Subject Drugs for off label uses . . . and, as a result, Plaintiffs paid for drugs at an inflated price or for drugs that they would not have purchased but for the illicit marketing scheme." Id. at *7.  Similar to Defendants' response here, the defendants there filed a motion to dismiss, among other claims, plaintiffs' fraud and negligent misrepresentation claims.

In dismissing these two specific claims, the court, in a well-reasoned opinion, found that plaintiffs made "sweeping allegations" regarding defendants' alleged promotion, yet they did not plead a single instance in which they, themselves, or any of their prescribing doctors received a misrepresentation of fact in which they relied upon in either taking or prescribing any of the subject drugs. Id. at *117.  In addition, the court explained that plaintiffs' common law fraud and negligent misrepresentation also failed to state a claim because plaintiffs did not allege a causal connection between their injury and defendants' conduct. Id. at *119.  While In re Schering-Plough dealt with New Jersey's common law claims, the same reasoning applies here since the fraud theory of that case parallels the instant action.  See Suarez v. Playtex Products, Inc., No. 08-2703, 2009 U.S. Dist. LEXIS 63774, at *8-10 (N.D. Ill. Jul. 24, 2009)(in determining whether plaintiffs sufficiently plead consumer fraud claims, the court held that plaintiffs failed to allege with specificity "whether or when [plaintiffs] relied on, or even saw, these [misrepresentations] prior to purchasing the coolers").  Accordingly, Plaintiff fails to inject precision and some measure of substantiation to support his TDTP claim, and therefore, it is dismissed without prejudice.  However, Plaintiff may move to

amend the Amended Complaint after complying with the notice requirements of the TDTP.

### III.    Negligent Misrepresentation

The Court notes at the outset that Plaintiff does not dispute that he must plead with particularity pursuant to Rule 9(b) with respect to his Negligent Misrepresentation claim.  Indeed, while Rule 9(b) does not automatically apply to claims of negligent misrepresentation in Texas, Rule 9(b) operates to require the dismissal of a negligent misrepresentation claim when an "inadequate fraud claim is so intertwined with [a] negligent misrepresentation claim that is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim."  American Realty Trust, Inc. v. Travelers Cas. & Surety Co. of Am., 362 F.Supp. 2d 744, 749 (N.D. Tex 2005); see also Benchmark Electronics, Inc. v. J.M. Huber, 343 F.3d 719, 723 (5th Cir. 2003)(Rule 9(b) by its terms does not apply to negligent misrepresentation claims and will not apply only when parties have separated the negligent misrepresentation claims).  Here, Plaintiff's negligent misrepresentation claim brims with allegations of fraud.

In Texas, the elements of a cause of action for negligent misrepresentation are: (1) the representation is made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. Federal Land Bank Association of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex.1991); Trans-Gulf Corp. v. Performance Aircraft Servs., 82 S.W.3d 691, 696 (Tex. App. Ct. 2002)(citations omitted).

Here, in order to support his negligent misrepresentation claim, Plaintiff alleges that

"Defendants falsely represented to Plaintiff in direct to consumer advertising and indirectly through misrepresentation to the prescribing physician, that Plavix was safe and effective.   The representations by Defendants were in fact false and Plavix was not safe and was in fact dangerous to Plaintiff's health."  Am. Compl., ¶ 79.  Plaintiff further alleges that "[a]t the time the aforesaid representations were made, Defendants concealed from Plaintiff and his prescribing physician information about the propensity of Plavix to cause great harm.   Defendants negligently misrepresented claims regarding the safety and efficacy of Plavix despite the lack of information regarding the same." Id., ¶ 88.  Plaintiff also points to the same allegations used to support his TDTP claim in ¶¶ 19-22, 27 and 29-30 of the Amended Complaint to substantiate his claim here.

Viewing the allegations in combination, Plaintiff has failed to allege with the requisite specificity a claim for negligent misrepresentation.  While Plaintiff may have arguably alleged with specificity elements one, two and three, Plaintiff fails to allege specific facts with respect to the fourth element of the claim - plaintiff suffers pecuniary loss by justifiably relying on the representation.  In this regard, Plaintiff's Negligent Misrepresentation claim fails to state a claim for the same reasons why Plaintiff's TDTP claim fails.   No plaintiff-specific facts were pled in connection with this claim.  The Amended Complaint fails to allege what specific misrepresentation were made to Plaintiff; when they were made to Plaintiff; the substance of the alleged misrepresentations; the name of Plaintiff's prescribing physician; the substance of the alleged misrepresentation made to Plaintiff's prescribing physician; and when the false representation was made.  While the Court does not suggest that Plaintiff must plead every single fact listed above, Plaintiff simply does not state with the requisite particularity the circumstances of the alleged fraud or otherwise inject precision into his allegations of how he relied upon Defendants'

misrepresentations in connection with taking the prescription drug Plavix.   See In re Schering-Plough, 2009 U.S. Dist. LEXIS 58900 at *117-119.   Accordingly, Plaintiff's Negligent Misrepresentation claim is dismissed without prejudice.

## CONCLUSION

Based upon the foregoing reasons, Defendants' motion to dismiss Counts V and VI of the Amended Complaint is granted.   However, Plaintiff may file a motion to amend the Complaint as to these Counts, if he intends to pursue those claims and can cure the deficiencies outlined by the Court.


DATE:  December 30, 2009                          /s/ Freda L. Wolfson
                                                  The Honorable Freda L. Wolfson
                                                  United States District Judge